**NOT FOR PUBLICATION**

**CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HENRY NORMAND, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -v- | : | Civil Action No. 05-1880 (JAP) |
| | : | |
| THE GOODYEAR TIRE & RUBBER | : | |
| COMPANY, d/b/a GOODYEAR AUTO | : | **OPINION** |
| SERVICE CENTER, an Ohio Corporation, | : | |
| JOHN DOE 1-10, and JANE DOE 1-10 | : | |
| (fictitious names), | : | |
| | : | |
| Defendant. | : | |
| | : | |

APPEARANCES

**GREENBERG & WALDEN**
Marvin R. Walden, Jr., Esq.
425 59th Street
West New York, NJ 07093
   Attorney for Plaintiff

**KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP**
Marilyn Sneirson, Esq.
Thomas C. Weisert, Esq.
One Newark Center, Tenth Floor
Newark, NJ  07102
   Attorneys for Defendant, Goodyear Tire & Rubber Company, d/b/a/ Goodyear
   Auto Service Center

PISANO, District Judge.

Plaintiff Henry Normand ("Plaintiff") filed the instant complaint against his employer, Defendant Goodyear Tire & Rubber Company ("Defendant" or "Goodyear"), based on his alleged wrongful and retaliatory discharge from employment.  Goodyear answered with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff opposed the motion with an affidavit that contained, *inter alia*, various factual allegations.  The Court may consider a matter "outside the pleadings," such as Plaintiff's affidavit, so long as the 12(b)(6) motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Fed. R. Civ. P. 12(b).  By Order of June 13, 2005, the Court converted the motion to dismiss to one for summary judgment.  The parties received proper notice and were given an opportunity to supplement their briefs.

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), and considers the arguments set forth by counsel in their briefs and at oral argument, held on June 28, 2005.  For the reasons discussed below, the Defendant's motion for summary judgment is granted.

## I.    BACKGROUND

Plaintiff worked for Goodyear as a salesman from June 1998 until his discharge on February 4, 2004.  (Complaint, ¶ 6-7).  Plaintiff alleges he was terminated without notice and without good cause.  (Complaint, ¶ 12).  Goodyear allegedly informed Plaintiff he was being fired for refusing to sign forms for his personnel file.  (Normand Affidavit, ¶ 4).  Just weeks prior to his termination, however, in January 2005, Plaintiff allegedly filed a report with the main office in Akron, Ohio, claiming that his store manager, Hugo Cordova ("Cordova"), was intoxicated at the workplace.  (Complaint, ¶ 10-11; Normand Affidavit, ¶ 4).  Plaintiff filed the

instant complaint on February 14, 2005.[1]

In Counts I and II, Plaintiff asserts that he was discharged in violation of the disciplinary procedures set forth in the employee manual.  (Complaint, First and Second Count).  In Count I, Plaintiff proceeds on the theory that the manual itself is a binding contract.  (*Id.*).  In Count II, he claims that Goodyear's consistent enforcement of the disciplinary procedures with other employees created an implied contract.  (*Id.*).  Plaintiff alleges in Count III that Goodyear breached the covenant of good faith and fair dealing.  (Complaint, Third Count).

Count IV alleges a violation of the Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1 *et seq*.  (Complaint, Fourth Count).  Plaintiff believes he was fired in retaliation for reporting Cordova's activities.  Plaintiff asserts that the reason given for his termination - refusal to sign forms for his personnel file - was merely pretextual.  (Normand Affidavit, ¶ 7).  The final count is a demand for punitive damages.  (Complaint, Fifth Count).

Goodyear submitted a copy of its Field Personnel Manual ("Manual") in support of its motion to dismiss.  (Sneirson Certification, Exhibit B ("Exh. B")).  Plaintiff does not dispute the authenticity of the document, and relies on portions of the Manual in its opposition paper.  The first paragraph of the first page of the Manual contains the following provision:

> The contents of this manual are to be used as a source of information only.  Goodyear reserves the right to modify, change or suspend any or all parts of this manual without notice and in all cases the decision of the Company on the meaning or intent of any provision shall be considered final.  The provisions contained in this manual are not intended to create nor to be construed to constitute a contract or implied contract of continued employment or future employment with any associate or associates.  The use of the terms "permanent" or "regular" to describe associates wherever

_____

[1]Goodyear removed the complaint to federal court on April 8, 2005.

> used herein is not intended nor is it to be construed to constitute a
> contract with any associate(s).

(Sneirson Cert., Exh. B at Section 1, Page 1).

To support his position, Plaintiff cites to the language on page twenty of the Manual's first section, titled "Statement of Policy - Conflict of Interest." It states, in relevant part:

> Associates must promptly notify Goodyear management once they
> become aware of any violation of any law, rule or regulation
> pertaining to Goodyear's operations. . . .  A report of criminal
> conduct by others in the organization shall be made by associates
> without fear of retribution. . . .  Compliance with this policy, which
> is part of the Goodyear Business Conduct Policies, is mandatory.

(Sneirson Cert., Exh. B at Section 1, Page 20).

Also relevant to the dispute is Section 5, titled "TERMINATION OF EMPLOYMENT."

Subsection 3 - "DISCHARGE" - states the following:

> Associates are subject to immediate discharge in case of gross
> misconduct such as theft, fraud, insubordination, possession of
> illegal drugs and similar situations.
>
> Associates are also subject to discharge for unsatisfactory
> performance or conduct which the Company believes to be within
> the associate's control, such as failure to comply with policy or
> procedure, lack of effort, lack of cooperation, poor attendance or
> other similar reasons.  These latter situations will generally be
> addressed by counseling and progressive discipline prior to
> discharge.

(Sneirson Cert., Exh. B at Section 5, Page 8).  The same section also provides that to discharge an associate with five or more years of service, approval is "necessary" from the Department Manager, Human Resources Representative & Division General Manager.  (*Id.*).

## II.   SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

4

Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *Celotex Corp.*, 477 U.S. at 324, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

### A.   The CEPA Claim is Barred by the Relevant Statute of Limitations

CEPA claims are governed by a one-year statute of limitations. N.J. Stat. Ann. § 34:19-5. When the basis for the claim is wrongful termination, the cause of action accrues on the date of

5

discharge.  *Alderiso v. Medical Ctr. of Ocean County, Inc.*, 770 A.2d 275, 277 (N.J. 2001).

Plaintiff does not dispute he was terminated on February 4, 2004.  He filed the complaint in

Superior Court in Hudson County on February 14, 2005, more than one year after his

termination.  Accordingly, Plaintiff's claim under CEPA is barred by the statute of limitations.

*Jones v. Jersey City Med. Ctr.*, 20 F. Supp. 770, 773 (D.N.J. 1998).  Plaintiff conceded this at

oral argument.

###### B.    Counts I-II Fail Because the Field Personnel Manual is Not an Enforceable Contract

Without the availability of a retaliation claim under CEPA, Plaintiff attempts to enforce

contractual rights derived from Goodyear's Manual.  Plaintiff alleges that "the rules and

regulations, practice and procedures manual constitutes an enforceable contract between plaintiff

and defendant."  (Complaint, First Count at ¶ 15).  He also asserts in Count II that Goodyear's

"conduct over a long period of time with similarly situated employees" was "reasonably

understood by all employees to create a binding duty and obligation between employer/employee,

prior to termination."  (Complaint, Second Count at ¶ 3).  By dismissing Plaintiff without notice

or good cause, Goodyear allegedly breached the implied contract created by both the Manual and

Goodyear's consistent application of disciplinary procedures to other employees.  (Complaint,

Second Count at ¶ 2).

###### 1.    The Law of Implied Employment Contracts

Generally, the employment relationship is terminable "at-will," meaning the employer

may fire an employee for good reason, bad reason, or no reason at all.  *Ditzel v. University of*

*Med. and Dentistry*, 962 F. Supp. 595, 606 (D.N.J. 1997).  The employee is similarly free to quit

at any time.  However, the New Jersey Supreme Court has deviated from the general rule,

holding that an employee handbook may create contractual obligations in certain situations.

*Woolley v. Hoffman - LaRoche, Inc.*, 491 A.2d 1257 (N.J. 1985).  In *Woolley*, the seminal case on

the issue, the court held that "absent a clear and prominent disclaimer, an implied promise

contained in an employment manual that an employee will be fired only for cause may be

enforceable against an employer even when the employment is for an indefinite term and would

otherwise be terminable at will."  *Id.* at 1258.  In other words, the long-standing "at-will"

employment relationship may be modified by the terms of an employee manual, creating a set of

binding practices and procedures governing an employee's discipline and termination.

The Supreme Court further clarified the *Woolley* standard in *Witkowski v. Thomas J.*

*Lipton, Inc.*, 643 A.2d 546, 550 (N.J. 1994):

> [T]he basic test for determining whether a contract of employment
> can be implied turns on the reasonable expectations of employees.
> A number of factors bear on whether an employee may reasonably
> understand that an employment manual is intended to provide
> enforceable employment obligations, including the definiteness and
> comprehensiveness of the termination policy and the context of the
> manual's preparation and distribution.

The test, therefore, asks whether the relevant manual is written in such "definite and

comprehensive" language to create in an employee's mind a reasonable expectation of

enforceable rights.  *Witkowski*, 643 A.2d at 550.  Even if the "definiteness and

comprehensiveness" of the termination policies are sufficient to create contractual expectations,

the employer may still overcome the implied contract by including a "clear and prominent

disclaimer."  *Ditzel*, 962 F. Supp. at 606; *Woolley*, 491 A.2d at 1271.  In the case at bar, the

Manual is not sufficiently comprehensive and definite to create an implied contract and, even if

7

sufficient, there is a clear page-one-paragraph-one disclaimer instructing all employees that the Manual is not to be construed as a contract.

### 2. *The Manual is Not Comprehensive and Definite*

For the Court to find that the Manual is an implied contract of employment, Plaintiff must point to comprehensive and definitive language such that an employee can reasonably expect the terms to be enforceable. *Witkowski*, 643 A.2d at 650; *Doll v. Port Auth. Trans-Hudson Corp.*, 92 F. Supp. 2d 416, 423 (D.N.J. 2000) ("to state a *Woolley* claim in the first instance, plaintiff must bring to the Court's attention some provision or language in the employment manual that guarantees the employee will not be terminated except for good cause."). Courts have further clarified that a policy manual or employee handbook may create an implied contract only where the manual "clearly and exhaustively" sets forth guidelines for discipline and termination. *Maietta v. United Parcel Serv., Inc.*, 749 F. Supp. 1344, 1361 (D.N.J. 1990).

Courts look for comprehensive policies that, *inter alia*, proscribe the types of misconduct that would result in termination, contain progressive disciplinary procedures and set forth mandatory procedures that must be followed prior to termination. *Id.* at 1361-62. In *Nicosia v. Wakefern Food Corp.*, for instance, the manual at issue included a definite and comprehensive termination policy that identified specific instances where employees could only be fired "for cause," and set forth a detailed three-step disciplinary procedure that had to be completed prior to discharge. 643 A.2d 554, 558 (N.J. 1994). In *Falco v. Community Med. Ctr.*, the court found that the manual did contain a comprehensive disciplinary and termination policy, but nonetheless did not find it sufficiently definitive such that employees could expect it to represent a binding contract. 686 A.2d 1212, 1224 (N.J. Super. App. Div. 1997). The court reasoned that the policy

8

did not contain an "express mandate" that all of the disciplinary steps be exhausted before an

employee could be terminated. *Falco*, 686 A.2d at 1224-25.

In the case at bar, the Manual does not contain comprehensive and definite provisions

regarding job security. *See, e.g., Ditzel*, 962 F. Supp. at 606 (finding that the Staff Handbook at

issue in the case "did not contain comprehensive and definite provisions on job security and did

not state that employees could only be fired for good cause."). Although the Manual identifies

instances of immediate discharge, the list is by no means exclusive. *See Radwan v. Beecham

Labs., Div. of Beecham, Inc.*, 850 F.2d 147, 151 (3d Cir. 1988). The Manual states in broad

terms that associates are "subject to immediate discharge in case of gross misconduct . . .

insubordination . . . and *similar situations*." (Sneirson Cert., Exh. B at Section 5, Page 8)

(emphasis added).

In addition, contrary to what Plaintiff would have the Court *infer*, there is no indication

that all other incidents of discharge would be for good cause only. The Manual simply states that

employees "are also subject to discharge for unsatisfactory performance . . . such as failure to

comply with policy or procedure, lack of effort, lack of cooperation, poor attendance or other

similar reasons." (Sneirson Cert., Exh. B at Section 5, Page 8) (emphasis added). This is not a

comprehensive and definitive promise that Plaintiff can only be fired for cause. *Ditzel*, 962 F.

Supp. at 606. The Manual continues, "[t]hese latter situations will *generally* be addressed by

counseling and progressive discipline prior to discharge." (Sneirson Cert., Exh. B at Section 5,

Page 8) (emphasis added). This language certainly cannot be construed as a definitive promise to

engage in mandatory disciplinary proceedings prior to discharge. Furthermore, the manual

merely references counseling and progressive discipline, but contains no provisions setting forth

9

specific guidelines for discipline or discharge.  *Ditzel*, 962 F. Supp. at 606.  Finally, Plaintiff

complains that his termination was improper because Goodyear needed approval from the

Department Manager, Human Resources Representative & Division General Manager.  Although

the provision states that approval is "necessary," thus providing the "express mandate" discussed

in *Falco*, the Court is not convinced that this provision, when read in conjunction with the entire

termination policy, converts the Manual to an implied contract under *Woolley*.[2]

Plaintiff also complains that his discharge runs contrary to the policy statement on page

twenty which states, "[a] report of criminal conduct by others in the organization shall be made

by associates without fear of retribution. . . .  Compliance with this policy, which is part of the

Goodyear Business Conduct Policies, is mandatory."  (Sneirson Cert., Exh. B at Section 1, Page

20).  Plaintiff claims he was following this mandatory policy when he reported Cordova's

activities to corporate headquarters, and he should have been free from retaliation.  Regardless of

the disputed factual basis for Plaintiff's dismissal, this provision is similarly not sufficient to

convert an employee manual into an implied contract of employment.  The provision is a general

policy statement that lacks the comprehensiveness and definitiveness required by the case law.

In addition, the policy merely echoes the anti-retaliation principles embodied in CEPA, and

should not be read to create the same rights in contract that employees are guaranteed by statute.

3.    *The Manual Contains a Sufficient Disclaimer*

Even if the Manual can be construed to create contractual rights, *Woolley* recognizes that

_____

[2]Plaintiff argues in his opposition that summary judgment should be precluded because there is a fact question concerning whether Goodyear attained the necessary approval.  Under the Court's analysis, however, such a factual finding is not relevant to the legal conclusion that the Manual is not a contract.

10

a clear and prominent disclaimer can negate the finding of an implied contract.  *Doll*, 92 F. Supp. 2d at 423.  Courts test the sufficiency of a disclaimer in terms of its prominence and clarity, characteristics consistent in protecting the reasonable expectations of the employee.  *Nicosia*, 643 A.2d at 560.

Under the clarity requirement, the disclaimer must be written "such that no one could reasonably have thought [the manual] was intended to create legally binding obligations." *Nicosia*, 643 A.2d at 560 (quoting *Woolley*, 491 A.2d at 1265).  Although the court in *Nicosia* suggested a proper disclaimer must expressly state that employees remained at-will and could be fired at any time with or without cause, courts since have relaxed that stringent approach. *Nicosia*, 643 A.2d at 560-61.

In *Doll*, for example, the court upheld a disclaimer which stated, "the rules[,] provisions and position descriptions contained herein are provided for the notification and advisement of all employees. They should not be, and are not to be, considered the terms of any contract agreements between PATH and its employees."  92 F. Supp. 2d at 423.  Similarly, the court in *Warner v. Federal Express Corp.*, was satisfied with the disclaimer language in the Federal Express Employee Handbook.  174 F. Supp. 2d 215, 226 (D.N.J. 2001).  The disclaimer stated that the handbook "should not be considered a contract of employment" and "contains guidelines only."  *Id.*; *see also Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 383 (finding valid a disclaimer that stated the manual was "solely intended to provide guidance and understanding of the benefit plans and policies of Viking Freight System, Inc. These benefits and policies in no way constitute an employee contract.").

The Goodyear Manual contains terms similar to *Doll*, *Warner*, and *Mardini*.  The Manual

clearly states it is to "be used as a source of information only," and that it is "not intended to create nor to be construed to constitute a contract or implied contract of continued employment or future employment with any associate or associates." (Sneirson Aff., Exh. B at Section 1, Page 1). This language clearly disclaims any contractual rights.

The prominence requirement can be satisfied if the disclaimer is in bold type, underlined, or set off in a different color or border. *Warner*, 174 F. Supp. 2d at 227. However, "no single distinctive feature is essential *per se* to make a disclaimer conspicuous," as courts recognize that a variety of different settings can be used to grab the attention of the reader. *Id.* (quoting *Nicosia*, 643 A.2d at 561). The Goodyear disclaimer is the first paragraph of the first page of the Manual. The Court finds that the reasonable employee would have noticed and read the disclaimer in this location. *Falco*, 686 A.2d at 1223. Based on the foregoing, the language in this Manual is such that "no one could reasonably have thought it was intended to create legally binding obligations. . . ." *Woolley*, 491 A.2d at 1265.

To the extent that Plaintiff in Count II also alleges an implied contract based upon Goodyear's "consistent enforcement of similar disciplinary and/or employment problems," Defendants appropriately point to *Pitak v. Bell Atl. Network Servs., Inc.*, 928 F. Supp. 1354 (D.N.J. 1996). In *Pitak*, the Plaintiffs were fired as part of a reduction in force and alleged, *inter alia*, breach of an implied contract based upon "a history of dealing and experience and corporate culture." 928 F. Supp. at 1370. The court dismissed the claim on summary judgment, holding that "corporate culture" was not sufficient to demonstrate proof of an implied employment contract. *Id.* The Court agrees with *Pitak*; "corporate culture" cannot convert the at-will employment relationship into something more. Insofar as Plaintiff argues that Goodyear's

12

consistent enforcement of disciplinary procedures to other employees created an implied

contract, Count II is dismissed.  *Id.*

Counts III and V and are also appropriate for summary judgment.  Count III, alleging

breach of the covenant of good faith and fair dealing, requires the existence of an underlying

contract.  *Schlichtig v. Inacom Corp.*, 271 F. Supp 2d 597, 606-07 (D.N.J. 2003) ("because the

court has concluded that the terms of this employee manual could not have given rise to an

implied contract of employment, it necessarily follows that the manual's provisions do not

contain an implied covenant of good faith and fair dealing.").  Consistent with the Court's

finding that there is no implied contract, Plaintiff's claim must be dismissed.  Finally, Plaintiff's

fifth count, seeking punitive damages, must also be dismissed for lack of any predicate causes of

action, all of which have been dismissed in this Opinion.

## IV.    CONCLUSION

For all of the reasons stated above, Defendant's motion for summary judgment is granted,

and this case is dismissed.  An appropriate Order accompanies this opinion.

_____
                                                                  s/ Joel A. Pisano
                                                                  JOEL A. PISANO, U.S.D.J.


Date:   July 13, 2005